## Case No. 8,074.

### LANNING v. LONDON et al.

[4 Wash. C. C. 159.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1821.

REAL PROPERTY—LAND WARRANTS — EJECTMENT.

1. Quaere, What constitutes a descriptive, and what an indescriptive warrant?

2. The fifth section of the act of assembly of the 3d of April, 1792. is confined to lands lying north and west of the Ohio, Alleghenny, and Conewango, and not to lands in Luzerne county; and neither under that act, or the act of the 30th December, 1786, or on general principles, is a survey of a warrant on settled lands void; but it will be good if the settlement is not followed up.

Ejectment for lands lying in Luzerne county [brought by Lanning against I. London, Samuel Ferris, John Ferris, and Moses Dolph]. The lessor of the plaintiff claimed under an application made on the 11th of October, 1792, in the name of Seth Pearce, and a warrant founded thereon, dated the 16th, for four hundred acres of land, including Lackawanna river, and adjoining land granted this day to David Brown, in Luzerne county. The purchase money was paid on the 10th of April, 1793, and the survey was made on the 27th of August following. Patent to Joseph Thomas, (from whom a regular title was deduced to the lessor of the plaintiff), dated in August, 1796. This warrant was one of sixteen, described as adjoining each other, in a regular series from the leading warrant to Thomas Brown, which was for four hundred acres, "including the Lackawanna river, and adjoining the land

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate·Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

of Thomas Ryerson, four miles above Trip's flat." The defendants, who were proved to be in possession of parts of the premises in dispute, claimed under an improvement commenced by Stephen Bishop in July, 1792, who having collected some brush, girdled a few trees, and cleared a spot for a house, sold to Rolph in September following. Evidence was given by five witnesses to prove that Rolph was living on the land with his family prior to September, 1793, that he had·two or three acres cleared, fenced, and corn growing on it in April, June and August of the same year, and that he continued to live on, and to improve the settlement, till some time in the year 1795, when he sold to Staples. The surveyor of Luzerne county, under an order of this court, retraced and plotted the lines of as many of the sixteen tracts as were deemed necessary to show the location of the leading and adjoining warrants to that of Seth Pearce, the tract in dispute. He stated upon oath, that he found the corners and three of the exterior lines of these tracts well marked, as of the year 1793, and also the two corner trees of this particular tract of land as mentioned in the survey. He also found a birch sapling on the west bank of the river, which appeared to be a corner tree, and to have been marked in 1793. A tree of this description is called for in the survey.

1. It was contended by the counsel for the plaintiff, that the leading warrant was sufficiently descriptive, and consequently that the inception of the plaintiff's title must date from the 11th of October, when the application was made. 4 Bin. 51; 2 Yeates, 152, 205; 1 Yeates, 523; 3 Bin. 35; 2 Smith, Laws, 254. That the improvement made by Bishop gave him no title whatever, and that it must give way to an application for the same land; unless, at the time the application was made, it had acquired the character of a settlement, and was then subsisting as such. 2 Yeates, 329.

2. That the application was followed up with due diligence to the consummation of the title, and that the survey is not only to be presumed to have been rightly made, but that it was proved to have been so made by the surveyor, who found three of the exterior lines of the connected tracts well marked, and even three corners of the tract in question; although, if the exterior lines in a survey of adjoining tracts, belonging to the same person, be run, and corners marked for each tract, ·so as to enable the surveyor to protract and plot them, it is unnecessary to run the interior lines on the ground.

3. That the witnesses who speak of Rolph's settlement in 1793, being contradicted by an equal number of witnesses, who swear that they saw no improvement on this land in that year, that fact, which is all important to the defendants, cannot be considered as established. But even if it be established, still the defendants cannot profit themselves

by it, as they do not connect themselves in any manner with the original settlement; and at all events, the defendants having taken no steps to perfect their equitable title, by obtaining a warrant and survey prior to the consummation of the plaintiff's title, and not having questioned the plaintiff's right in time, by a caveat, their prior settlement, if it existed, cannot now be opposed to the plaintiff's patent.

As to what constitutes an improvement, they cited 2 Smith, Laws, 395; 3 Yeates, 77 61, 67, 72; 4 Yeates, 331, 534; 2 Smith, Laws, 175; 4 Bin. 75. The improvement title, to prevail against a warrant, must have acquired its legal character of a settlement, before the adverse title arises. 2 Yeates, 329.

For the defendants it was contended, that whether the defendants had a title or not, still the plaintiff could not recover.

1. Because, as it is proved that there was a legal settlement on the lands in dispute prior to the plaintiff's survey, that survey was void under the act of the 30th of December, 1786 (2 Smith, Laws, 395), the act of the 3d of April, 1792 (3 Smith, Laws, 70), and on general principles. They contended, that progress towards an improvement in 1792, and its consummation as early as March, 1793, were fully proved. That if an incipient improvement is commenced and continued to its consummation, it will refer back to its inception; improvement being of necessity progressive. Confair v. Steffey [6 Serg. & R. 249]; Campbell v. Kyler [6 Serg. & R. 257] MS. Reports, Sup. Ct. of this state; 2 Smith, Laws, 236, 237.

2. That the original surveys not being produced, the report of the surveyor under the order of court as to the lines and corners, and as to the fact that the original surveys were put into his hands, ought not to be regarded by the jury; and then it was incumbent on the plaintiff to show that Seth Pearce's warrant was actually surveyed, which is not done; on the contrary, it is proved by the surveyor who run the north line of that tract, that no marked trees were found on it; and in fact, only one line is proved, and the two corner trees of that line.

3. That the plaintiff has not used due diligence in taking out his warrant, and having it surveyed.

4. That the plaintiff's warrant is indescriptive; and of course dates, as to title, from the survey, which is posterior to the defendant's title. 4 Bin. 51, 165.

5. That though the defendants do not deduce their title regularly from the first settler, yet as the possession has never for a moment been vacant, the jury will presume that it was transferred from one occupier to the other; and that as no evidence has been given of abandonment by either of the occupants, a deduction of title need not be shown; at all events it is sufficient for the defendant to show an outstanding title in any of the prior settlers. 6 Bin. 125; 3 Bin. 167; 4 Bin. 73.

Binney & Sergeant, for plaintiff.
Mr. Chauncey and Joseph Ingersoll, for defendants.

WASHINGTON, Circuit Justice (charging the jury). The plaintiff's title is all in paper, and independent of extraneous objections, it appears to be unexceptionable: An application on the 11th of October, 1792, in the name of Seth Pearce, for four hundred acres of land in Luzerne county, including Lackawanna river, adjoining land granted this day to David Brown. This is one of a series of applications, to the number of sixteen, commencing with one in the name of Thomas Brown, for four hundred acres, including the Lackawanna river, adjoining Thomas Ryerson, four miles above Trip's flat, in Luzerne county. The other applications follow and adjoin each other. The warrant bears date the 16th of October, 1792; the purchase money was paid the 10th of April, 1793; the survey was made on the 27th of August in the same year; and the patent issued in August, 1796. The defendants' title commences with an asserted improvement in 1792, and consummated by a settlement as early as March, 1793, according to the strictest definition of that term, and continued down to the institution of this suit. It has been made a question when the plaintiff's title commenced? On the part of the plaintiff, it is contended, that the application in the name of Thomas Brown, the leader in the series of consecutive applications, is sufficiently descriptive to entitle the plaintiff to date the inception of his title on the day it was made. On the other side it is contended, that this leading application is indescriptive, and consequently that the plaintiff cannot date the commencement of his title earlier than the 27th of August, 1793, when the survey was made. As to the general definition of a descriptive warrant, the judges of the supreme court of this state, and of this court, have expressed themselves in language which can hardly be misunderstood. In Lauman v. Thomas, 4 Bin. 51, Yeates, J., says, "If the description of the land in the warrant point out specially and exclusively certain lands with accuracy, the right vests immediately, if followed up. But if it may equally suit several tracts of land, the right vests by the survey." The chief justice speaks of a descriptive warrant, as one which designates the land precisely, or with reasonable certainty. Breckenridge, J., says, that it should be of that precise nature as to attach to a particular spot, exclusive of all others. In Davis v. Keefer, 4 Bin. 163, Smith, J., stated, "that if the location describe the land with such reasonable certainty as that it could not be laid on other land with propriety, this is all the certainty the law requires." In Lewis v. Meredith [Case No. 8,328], in this court, it

was said, that to render an application a location on the day it is made, the land must be described with such certainty as that a subsequent applicant may know how to appropriate the adjacent residuum, without danger of interference.

Although the judges in the above cases have used language somewhat various, it seems to me that they have all expressed the same idea. But it often happens that whilst judges agree in the correctness of a general definition or rule of law, they will sometimes differ in its application to a particular case. And in the one now under consideration, the truth of the above observation might probably be established, if it were deemed essential to give an opinion as to the character of this application. We do not however consider it in this light, and I shall proceed to examine the other points in the cause, upon the assumed ground that this is an indescriptive warrant; but without deciding that it is so.

The defendants claim a presumptive right to the premises in controversy, founded upon a settlement and improvement, as to which the inquiry will be at what time it commenced. As to Samuel and John Ferris, we understand the evidence to be, that improvements were commenced on those parts of the tract which they respectively claim, sometime in 1792, by the cutting of brush, girdling a few trees, cutting logs, and preparing spots on which to erect cabins; but it is not stated by whom these improvements, if they may be so called, were made, and therefore these defendants can derive no title in consequence of them. Two of the witnesses in behalf of these defendants state, that they do not know that any actual settlement was made upon the land claimed by them, prior to the 1st of September, 1793, and the third witness has sworn that they came on in the year 1794. If the jury believe, from the evidence, that the facts in relation to the settlement and improvement of these two defendants have been correctly stated, (as to which they are to decide), then it is perfectly clear that they have no title in opposition to the plaintiff's, which preceded their settlement right; provided the plaintiff's title shall be found clear of the objections which have been made to it.

As to the land in possession of Dolph, it is sworn by five witnesses, that it was improved and settled, in the strictest legal sense, in the year 1793, and prior to the plaintiff's survey. In opposition to this testimony, four or five witnesses have been examined on the part of the plaintiff, who state that they were upon the land in dispute, in the summer and autumn of 1793, and some of them explored this particular tract on both sides of the river, and that they saw no improvements whatever. They add, that they believed then, and still believe, that these lands were at that time vacant and unsettled. This fact then is left to the jury,

whose exclusive province it is to weigh, and to decide upon the evidence.

Not feeling ourselves at liberty to anticipate the opinion of the jury, as to the above fact, we can only state the law hypothetically. If you believe that the settlement of Rolph was subsequent to the inception of the plaintiff's title, then the plaintiff is entitled to a verdict, unless that title is destroyed by some one of the objections which have been made to it. But if, on the other hand, the settlement was prior to the inception of the plaintiff's title, then the verdict should be in favour of the defendant Dolph, unless there is some fatal objection to his title. If, in the last place, the plaintiff's title is defective, then you should find in favour of all the defendants, however destitute they, or either of them may be of title.

This leads us necessarily to the examination, 1. Of the objections made to the plaintiff's title; and 2. Of those alleged against the title of Dolph; an opinion having been already given upon that of the two Ferris.

1. The first objection stated to the plaintiff's title is, that the land claimed by Dolph, having been improved and settled, previous to August, 1793, the survey of the warrant, in the name of Seth Pearce, was void, under the act of the 30th of December, 1786; under that of the 3d of April, 1792; and lastly, upon general principles of law. As to the first act, it may suffice to observe, that it is confined, not only by the preamble, but by the express provisions of the fourth section, to the tract of country purchased in the year 1768, at the treaty of Fort Stanwix; which does not, as I understand, comprehend the premises now in controversy. It is quite as clear that the act of April, 1792, from the second section to the tenth inclusive, is inapplicable to the district of country in which these lands in controversy lie, but is confined to that which lies north and west of the Ohio, Alleghenny, and Conewango creek. The first section lowers the price, theretofore demanded by the state, for the vacant lands within the purchase of 1768, and those on the east side of Alleghenny and Conewango. The second section declares that all other lands lying north and west of Ohio, Alleghenny and Conewango, "shall be, and are hereby offered for sale, to persons who will cultivate, improve and settle the same, at the price of £7 10s. per one hundred acres, to be located, surveyed, and secured to such purchasers, in the manner hereinafter mentioned." The third section describes the mode of proceeding by aplication, and warrant, &c. The fourth section requires the surveyor general to divide the lands thus offered for sale into districts, and to appoint a deputy for each; and the fifth section enacts, that the deputy surveyor shall, on request of the respective grantees in such warrants named, proceed to survey the lands in such warrants described, "provided that they shall not, by virtue

of any warrant, survey any tract of land that may have been actually settled and improved, prior to the date of the entry of such warrant with the deputy surveyor, except for the owner of such settlement and improvement." It is true, as contended by the defendants' counsel, that the expression is "any warrant," without the relative "such"; but it is perfectly clear to the court, that the context fully supplies the omission of the relative, the warrant here spoken of being "one of the steps by which those lands were to be located, surveyed and secured," as mentioned in the second and third sections. The same expression is found in the seventh section, and yet it is not to be doubted, that the warrant spoken of relates to the lands then offered for sale, because the act to be done is expressly confined to the deputy surveyor, appointed by virtue of that act. If the survey was not made void by either of the above acts, the next inquiry is, was it void upon general principles of law? We think not. Two warrants may issue for the same tract of land, but at the peril of the second warrant holder. His warrant is not void, but voidable, by the first warrant holder, provided he proceeds regularly to complete his title, so as to secure to him the preference which he had gained by the priority of his warrant. But if he is guilty of laches, and the subsequent warrant is first surveyed, he loses his preference, and the title vests in the posterior warrant holder. In like manner, we conceive, that a warrant surveyed upon land previously settled, may be avoided by the settler, if he continue his possession, and is not chargeable with negligence; but if he abandon his settlement, or is guilty of laches, his equitable pre-emptive right cannot be opposed to the title of the warrant holder. That a warrant and survey are not considered by the legislature to be void upon general principles of law, because they apply to land previously settled, is obvious from the before mentioned provisions of the acts of December, 1796, and April, 1792, which were enacted for the express purpose of declaring the survey to be void, in respect to lands lying on the districts of country to which those claims were confined. In further confirmation of the opinion which we hold upon this point, I refer, with no little confidence, to what was said by the supreme court of this state, in the case of Magens v. Smith, 4 Bin. 73. The plaintiff claimed under a warrant, dated on the 1st of July, 1784, which was surveyed in November of the same year. The defendant claimed under the settlement of English, in 1774, who in 1775 or 1776 sold to Runeger, and the settlement was found by the jury to be subsisting when the warrant issued. The defendant came into possession in 1795. The chief justice says, "that no injury can arise, from granting a warrant for the pre-emptive right at the risk of the warrantee: if the improver, or any person deriving title under him, should appear, the warrant should be voidable by them."

2. The next objection to the plaintiff's title is, that the land in controversy was never legally surveyed, and that it was incumbent on the plaintiff to have laid before the court and jury the particular surveys made of the above warrants, as well as the connected plat returned by the deputy surveyor, in order not only to prove the fact of the survey, but to point out the precise location of the particular tract in question. To this objection and demand, it is quite sufficient for the plaintiff to answer, that he has a patent for the land in dispute, which recites the survey of it in 1793, returned into the office. The legal presumption then is, that the land was duly surveyed, and the plaintiff is not bound to give further evidence of that fact. The burthen of proof, in contradiction of this fact, rests wholly on the defendants, who deny it. The evidence principally relied upon, is that of the surveyor who ran the lines of Seth Pearce's tract, under the order of this court; who states that about two thirds of the north line passed through cleared land, and that although the other third was thickly covered with large timber, yet he found no marked line tree on that course. He admits nevertheless that the lower line was well marked, as also the two corner trees belonging to it, and that he found the birch sapling near the end of the north line on the west bank of the river, and marked as of the year 1793. These corners correspond with three of the corners mentioned in the patent, and it is for you to say if they be the same? The south line is strongly pointed out by the line on the west side of the river, of which the former appears to be a continuation. In addition to all this, it is stated by two witnesses who were in company with the surveyor when these surveys were made in 1793, that the north line of Seth Pearce's survey was run, and that all the exterior lines of the sixteen surveys were actually run and marked. If so, it was not necessary to run the interior lines of each tract on the ground, if the corners of each were marked, so as to enable the surveyor to protract them. If the production of the original surveys and the connected map would throw further light on this subject it is fairly observed by the plaintiff's counsel, that the defendants had it equally in their power with the plaintiff to produce them. After all, if the proof of the lines and corners of this survey was more defective than it is, the objection would come with a bad grace from those who in 1810 prevented the plaintiff by force from retracing the lines, and establishing the proof of their having been run and marked. Upon these observations this question is submitted to the jury.

3. The last objection to the plaintiff's title is, that the equitable title conferred by the application was not followed up with due diligence. It is for you to decide under

all the circumstances of this case, whether this charge is well founded. The application was made in October, 1792, upon the eve of the winter months; the purchase money was paid and the warrant taken out in the following spring, and surveyed in four months from the last mentioned period. This objection however is of no consequence if the defendant has no title.

2. If you should be of opinion that the settlement of Rolph was prior to the plaintiff's survey, then the defendant Dolph is entitled to a verdict, unless there are fatal objections to his title. It may be proper here to observe, that Trip obtained a warrant for this settlement in 1803, and that it was surveyed in 1804. The first objection to this defendant's title is, that he does not claim under Rolph's settlement. Trip states in his deposition, that in the fall of 1795 Rolph sold to Staples, and that Isaac Trip, Senior, exchanged this land with Lutz and Aaron Dolph for property in Providence, and that the defendant Moses Dolph came in after them. But whether Trip claimed under Staples, or Moses Dolph under Lutz and Dolph, is not affirmed by this witness. Stephens says that Rolph sold to Staples, and that Lutz and Aaron Dolph came in after Rolph. That Trip exchanged with Lutz and Dolph, and that Moses Dolph came in after them. If the jury understand the evidence in this way, it follows that although the title was regularly vested in Staples in 1795, yet not he, but Lutz and Dolph entered into the occupancy of the land, not as claiming under Staples, but for aught that appears, as original occupants, or as claiming under Trip, who like Lutz and Dolph derived no title under Rolph or Staples. And again, Moses Dolph, the defendant, sets up no claim under any of the above persons, but appears before the court as an original occupant. Now we hold it to be perfectly clear, that if a settler rests his title upon a settlement, prior to that of another settler or warrant holder, he must either prove that his own settlement was prior, or he must connect himself by a regular deduction of title by conveyances, or by parol, with some person whose settlement was prior to the opposing title. This is at least as necessary to support a settlement, as a paper title; perhaps more so; for it is much more likely that the former should be abandoned, than the latter. It is indeed not easily to be presumed that a warrant holder, having paid the purchase money, would wish to abandon his right; and if he could entertain such a wish, it is difficult to conceive in what way he could accomplish it. He may loose his priority by laches, but we cannot well understand how it can be correctly said that he has abandoned it; if he can, the evidence must be strong indeed. But a man who has no other title but to a pre-emption, by settlement, in a particular spot, for which he has paid nothing, may well abandon such right; and we know of no better evidence of such an intention, than his leaving the improvements he may have made, and removing to some other spot, without having disposed of the fruits of his labour, but leaving them to be enjoyed by the first person who may choose to take possession of them.

It was contended by the defendants' counsel, that an abandonment can never be asserted where, as in this case, the premises have been successively occupied by some person. We admit the correctness of this argument, where the improver, or those claiming under him have continued the possession. But mere occupancy by those who do not claim under the improver, can give no title above that which they can derive from their individual improvement. We conceive that the law upon this subject is very correctly stated by the chief justice in the case of Magens v. Smith, before noticed, in which it is stated, "that the warrant and survey of the plaintiff would have no effect against English, or any person claiming under him, provided the improvement had not been abandoned; but," it is added, "there is no reason why they should not be good against the defendant, if he made an original entry and settlement in 1795. Improvement rights are protected for the sake of the improvers, and not for strangers."

It is contended that the jury ought to presume that Staples sold to Trip, and he to Lutz and Dolph, and they to the defendant. But to raise such a presumption, there surely ought to be some evidence on which to found it. The mere circumstance of successive occupations is not sufficient.

It was further insisted by the defendants' counsel, that although Dolph may have failed in connecting himself with Rolph's settlement, he may nevertheless secure himself under the outstanding settlement rights of some prior improver. But who is the person whose title he can oppose to the plaintiff's? Not Rolph's, for that was disposed of to Staples. Not Trip's, for although he acquired a legal title by his warrant and survey in 1804, yet as he appears before the court as an original occupant, long subsequent to the plaintiff's survey in August, 1793, the defendant cannot oppose his title to the plaintiff's. An outstanding title which shall defeat the plaintiff, must not only be a legal and subsisting title, but it must be better than the plaintiff's title.

Another objection to the defendants' title is, that it was not followed up until the year 1803 and 1804, long after even the patent had issued to the plaintiff; nor did the persons who claimed this settlement right caveat the plaintiff, although they knew of, and by violence attempted to prevent the survey in 1793. We consider this objection to be equally fatal with the other to this defendant's title. Such laches amounted either to an abandonment, or to a forfeiture of the pre-emptive right gained by the settlement.

If, upon the whole, the plaintiff's warrant was legally surveyed upon the land in dispute, he is entitled to a verdict, if, in the opinion of the jury, the defects in the defendant's title as before stated are supported by the evidence. You must, at all events, find in favour of the defendant Isaac London, who is shown not to be in possession of any part of the premises in dispute. [See Case No. 8,076.]

Verdict for lessor of plaintiff as to the two Ferris and Moses Dolph, and in favour of Isaac London.

NOTE. In this case it was decided, that what a witness had heard two of the sellers say, as to the one having sold his improvement to the other, was not proper evidence, being, as against the plaintiff, mere hearsay. The parties ought to have been examined on oath, so as to have given to the plaintiff the privilege of cross examining them.
[A rule was granted in this case to show cause why a new trial should not be granted, but upon the hearing the court refused the new trial, discharging the rule. Case No. 8,075. For other ejectment cases brought by the same plaintiff against other defendants, see Cases Nos. 8,072, 8,073.]